## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

DONALD J. CALLENDER,

     Plaintiff,

     v.

ERICA CALLENDER,

     Defendant.

Civil Action No. TDC-15-4015

### MEMORANDUM OPINION

Plaintiff Donald J. Callender has filed suit against Defendant Erica Callender, alleging conversion and fraud. Pending before the Court are Defendant's Motion to Dismiss, Defendant's Motion for Summary Judgment, a Motion to Dismiss filed by now-dismissed defendant Bank of the Bahamas, and a "Motion to Interplead as a Necessary Party" filed by Plaintiff's wife, Diane Callender. The Motions are fully briefed and ripe for disposition. No hearing is necessary to resolve the issues. *See* D. Md. Local R. 105.6. For the reasons set forth below, Defendant's Motion to Dismiss and Motion for Summary Judgment are DENIED, Bank of the Bahamas' Motion to Dismiss is GRANTED IN PART and DENIED IN PART, and Diane Callender's Motion to Interplead is DENIED.

### BACKGROUND

The following facts are presented in the light most favorable to Plaintiff, the nonmoving party:

## I.    Alleged Conversion and Fraud

Plaintiff is the sole owner of Convergence Management Associates LLC ("CMA") and its affiliate, Convergex Caribbean Limited ("Convergex"), companies through which Plaintiff provides financial consulting services.   At one time, CMA employed Defendant, Plaintiff's daughter-in-law, as an office manager and administrative assistant.   Since at least 2010, Convergex, a Bahamian corporation, has maintained a business banking account at Bank of the Bahamas.   Plaintiff claims that, on two separate occasions, Defendant transferred money out of Convergex's account without Plaintiff's authorization or knowledge.   First, on May 27, 2010, Defendant instructed Bank of the Bahamas to wire $29,000 from Convergex's account to an account belonging to the Island Hotel Company at the City National Bank of Florida.   Defendant allegedly owed money to the Island Hotel Company.   Then on April 17, 2012, while Plaintiff was in the hospital, Defendant directed Bank of the Bahamas to wire $125,000 from the Convergex account to her personal account with Bank of America.   In response to an inquiry from a Bank of the Bahamas employee, Defendant falsely stated that Plaintiff had authorized her to make the transfer.   She also said that Plaintiff could not provide his consent to the transfer because he was ill.   Bank of the Bahamas executed the transfer.   Plaintiff claims that he did not realize that Defendant had removed the $154,000 from the account until January 31, 2015, when he was conducting an audit of his financial and tax records.

## II.   Procedural History

On December 31, 2015, Plaintiff filed a three-count Complaint initiating this action. Counts I and II allege that Defendant is liable for conversion and fraud, respectively.   Count III asserts that Bank of the Bahamas was negligent in allowing the transfers to take place.   On January 27, 2016, Defendant filed a Motion to Dismiss, arguing that the action is time-barred.

2

On February 16, 2016, Plaintiff submitted an Opposition to the Motion.  On March 4, 2016, Defendant filed a Reply memorandum.

On March 30, 2016, Bank of the Bahamas filed a Motion to Dismiss, alleging a lack of personal jurisdiction and arguing that Plaintiff lacked standing to assert the claims in the Complaint.  That same day, Defendant filed an "Incorporation and Joinder of Bank of Bahamas Limited's Motion to Dismiss," indicating that Defendant joined in Bank of the Bahamas' argument that Plaintiff does not have standing.  On May 5, 2016, Plaintiff submitted an Opposition to Bank of the Bahamas' Motion to Dismiss in which he stated that because the claim against Bank of the Bahamas had been settled, he was responding only to the portion of the Motion joined by Defendant.  On May 13, 2016, Plaintiff filed Notice of Dismissal of his claim against Bank of the Bahamas pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).  On May 16, 2016, the Court issued an Order dismissing Bank of the Bahamas from the action.

On April 20, 2016, Defendant filed a Motion for Summary Judgment, which, like Defendant's Motion to Dismiss, argues that the claims are time-barred.  On May 23, 2016, Plaintiff filed an Opposition to Defendant's Motion for Summary Judgment.

On April 29, 2016, Diane Callender, Plaintiff's wife and Defendant's mother-in-law, filed a "Motion to Interplead as a Necessary Party," requesting that the Court add her to this case as a party.  On May 6, 2016, Plaintiff submitted an Opposition to Diane Callender's Motion to Interplead.  On May 24, 2016, Diane Callender filed a Reply to Plaintiff's Opposition to the Motion to Interplead.

# DISCUSSION

## I.     Legal Standards

### A.     Motion to Dismiss

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

### B.     Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if

sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II.    Prudential Standing

Having joined in the Motion to Dismiss filed by Bank of the Bahamas, Defendant asserts that Plaintiff lacks standing to pursue this action because the money that Erica Callender allegedly stole belonged to Convergex, not Plaintiff.   Convergex is a company incorporated under the laws of the Bahamas.   Plaintiff is the company's sole shareholder, and CMA, controlled by Plaintiff, is Convergex's sole director.   Plaintiff responds, without authority, that he does have standing, then argues that even if he does not, he should be afforded an opportunity to substitute Convergex as the plaintiff.

"There exist two strands of standing:  Article III standing, which ensures that a suit presents a case or controversy as required by the Constitution, and 'prudential standing,' which encompasses 'judicially self-imposed limits on the exercise of federal jurisdiction.'"  *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 753 (4th Cir. 2013) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).   Prudential standing dictates "that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

Because the Motion claims that Plaintiff is asserting legal rights which belong to Convergex, it challenges Plaintiff's prudential standing.   The argument is raised under Federal Rule of Civil Procedure 12(b)(6).   *United States v. Day*, 700 F.3d 713, 721 (4th Cir. 2012) (stating that "issues of prudential standing are non-jurisdictional"); *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011) ("Unlike a dismissal for lack of

constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6)").

As a general rule, a shareholder lacks prudential standing to assert a claim for injuries to a corporation. *Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336 (1990) (noting that the "shareholder standing rule" is a matter of prudential standing "that generally prohibits shareholders from initiating actions to enforce the rights of the corporation unless the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment"); *see Rivers v. Wachovia Corp.*, 665 F.3d 610, 614-15 (4th Cir. 2011); *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 757 (7th Cir. 2008) (finding that an individual's status as the sole shareholder, officer, and director of a corporation that owned a gas station did not give him standing to assert a breach of a franchise agreement with the corporation); *Kuntz v. Lamar Corp.*, 385 F.3d 1177, 1183 (9th Cir. 2004); *cf. Gen. Technology Applications, Inc. v. Exro Ltda.*, 388 F.3d 114, 119 (4th Cir. 2004) (holding that a member of a limited liability company ("LLC") lacked standing to assert the LLC's claims). The funds at issue in this case belonged to Convergex. Their conversion injured Convergex. As a shareholder of Convergex, Plaintiff lacks prudential standing to assert claims on its behalf.

Plaintiff requests the opportunity to substitute Convergex into this action as the plaintiff. Federal Rule of Civil Procedure 17 provides that, although an "action must be prosecuted in the name of the real party in interest," the action should not be dismissed on those grounds "until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(1), (3). Substitution is available when the plaintiff made an "understandable mistake" in bringing the action in the plaintiff's own name. *See Intown Props. Mgmt., Inc. v. Wheaton Van Lines, Inc.*, 271 F.3d 164, 171 (4th Cir.

6

2001); Fed. R. Civ. P. 17(a)(3) advisory committee's note to 1966 amendment (stating that this provision "is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made"). Evidence that the plaintiff's decision was a deliberate, tactical maneuver, rather than an oversight, could weigh against allowing substitution. *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997); *see also Roanoke Props. Ltd. P'ship v. Dewberry*, Nos. 97-1905 & 97-1991, 1999 WL 1032605, at *5 (4th Cir. Nov. 15, 1999). The court also considers the prejudice to the defendant. *See Hill v. BASF Wyandotte Corp.*, 782 F.2d 1212, 1213-14 (4th Cir. 1986). The risk of prejudice is low when one plaintiff is traded for another without any change to the claims or prospect of additional liability for the defendant. *Advanced Magnetics, Inc.*, 106 F.3d at 20 ("A Rule 17(a) substitution should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants.").

Plaintiff is Convergex's sole shareholder and the only member of CMA, the LLC which serves as Convergex's sole director. There is no indication that Plaintiff was attempting to gain a tactical advantage when he decided to sue in his own name and not the name of Convergex. There is likely no prejudice to Defendant from substitution given that the claims against her will not change and substitution will not expose her to additional liability. Therefore, the Court finds that Plaintiff's mistake was understandable and will grant leave to file a motion to amend the complaint so that this action may be brought in the name of the real party in interest.[1] *See id.* at 20-21 (holding that the district court erred in refusing to grant the plaintiff leave to amend the complaint to substitute in shareholders as plaintiffs for claims relating to their own rights);

---

[1]   Given that Defendant does not reside in this district and the claims address funds taken from a Bahamian corporation's bank account in the Bahamas, it is not clear that venue is proper in this district. *See* 28 U.S.C. § 1391(b).

*Breaker v. United States*, 977 F. Supp. 2d 921, 933-34 (D. Minn. 2013) (allowing a corporation to substitute as the plaintiff where its sole owner had mistakenly filed suit in his own name). The Motion is therefore granted to the extent that the Court finds that Plaintiff lacks standing, but denied in that the Court will not dismiss the case but instead grants leave to amend to substitute Convergex as the real party in interest.

### III.    Statute of Limitations

Defendant also asserts that Plaintiff's claims for conversion and fraud are time-barred. Although neither party conducts a choice-of-law analysis, the Court finds that Maryland's statute of limitations applies to Plaintiff's claims, regardless of whether the claims themselves are governed by Maryland law.   A federal court exercising diversity jurisdiction over state law claims must apply the choice-of-law rules of the forum state, in this case, Maryland.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941).   Under Maryland law, the general rule is that "the statute of limitations of the forum state applies even when that state's choice-of-law rules require that another state's substantive law be applied." *Sherwin-Williams Co. v. Artra Group, Inc.*, 125 F. Supp. 2d 739, 756-57 (D. Md. 2001); *Lewis v. Waletzky*, 31 A.3d 123, 133 (Md. 2011) (holding that Maryland law controls procedural matters and that "statutes of limitations are procedural for choice-of-law purposes").   Under Maryland's general statute of limitations, civil suits must be filed within three years from the date the action accrues.  Md. Code Ann., Ct. & Jud. Proc. § 5-101 (2013).

Plaintiff initiated this action on December 31, 2015, more than three years after the allegedly unauthorized wire transfers from Convergex's account in 2010 and 2012.  However, under Maryland's "discovery rule," a tort claim does not accrue until the plaintiff "in fact knew or reasonably should have known of the wrong." *Poffenberger v. Risser*, 431 A.2d 677, 680

8

(Md. 1981); *see also O'Hara v. Kovens*, 503 A.2d 1313, 1324 (Md. 1986) (stating that plaintiffs are on notice of a fraud claim when they have "knowledge of circumstances which would cause a reasonable person in the position of the plaintiffs to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the alleged fraud"). The discovery rule "is not so much an exception to the statute of limitations, as it is a recognition that the Legislature, in employing the word 'accrues' in § 5-101 never intended to close our courts to plaintiffs inculpably unaware of their injuries." *Murphy v. Merzbacher*, 697 A.2d 861, 865 (Md. 1997). Defendant has filed both a Motion to Dismiss and a Motion for Summary Judgment arguing that the discovery rule does not excuse Plaintiff's failure to file within three years of the unauthorized transfers.

### A.    Motion to Dismiss

A statute of limitations argument is an affirmative defense that may be raised through a Rule 12(b)(6) motion if "the time bar is apparent on the face of the complaint."[2] *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005). Defendant's Motion to Dismiss contends (1) that the discovery rule does not apply to Plaintiff's conversion and fraud claims, and (2) that, even if it did, Plaintiff should have known about the transfers more than three years before he filed the Complaint. Neither argument is sound.

Maryland courts have stated that the discovery rule applies to the torts of fraud and conversion. *O'Hara*, 503 A.2d at 1316-18 (fraud); *Bacon & Assocs., Inc. v. Rolly Tasker Sails (Thailand) Co.*, 841 A.2d 53, 65 (Md. Ct. Spec. App. 2004) ("Moreover, even if the discovery rule were inapplicable to breach of contract actions, it is applicable to conversion.").

---

[2] Plaintiff attached two affidavits to his Opposition to Defendant's Motion to Dismiss. Because these documents are not integral to the Complaint, the Court does not consider them in ruling on the Motion. *See Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

Defendant's reliance on *Advance Dental Care, Inc. v. SunTrust Bank*, 906 F. Supp. 2d 442 (D. Md. 2012), is misplaced. *Advance Dental Care* held that the discovery rule does not apply to claims brought under the Uniform Commercial Code provision prohibiting conversion of negotiable instruments. *Id.* at 446-449; Md. Code Ann., Com. Law § 3-420(a) (2013). Acknowledging that Maryland courts have liberally applied the discovery rule to the state's general statute of limitations, *Advance Dental Care* emphasized that it was interpreting the UCC's "distinct statutory scheme," which values the finality of transactions and uniformity among states' commercial laws. 906 F. Supp. 2d at 446-47. *Advance Dental Care* is therefore limited to the UCC's statutory framework, which has no bearing on common law conversion claims. Although Defendant argues that common law conversion, like UCC conversion, typically occurs in a manner that puts plaintiffs immediately on notice, it has identified no basis to justify ignoring Maryland precedent holding that the discovery rule generally applies to civil claims, including conversion. *See Poffenberger*, 431 A.2d at 680; *Bacon & Assocs.*, 841 A.2d at 65.

Defendant next contends that even if the discovery rule applies to Plaintiff's claims, it does not excuse the failure to bring suit within three years of the allegedly unauthorized transactions. Defendant asserts that the Complaint is deficient because it does not allege facts that meet the following condition set forth under the Maryland Code on Courts and Judicial Procedures relating to fraudulent actions: "If the knowledge of a cause of action is kept from a party by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud." Md. Code Ann. Cts. & Jud. Proc. § 5-203.

This provision, however, relates only to fraud actions, not conversion claims.  Moreover, Defendant's criticism that the Complaint does not allege that Defendant took affirmative steps to conceal the unauthorized transfers from Plaintiff misses the mark because the alleged failure to comply with a statute of limitations is an affirmative defense.  *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).  A court cannot reach the merits of an affirmative defense on a motion to dismiss unless "all facts necessary to the affirmative defense 'clearly appear[] *on the face of the complaint.*'"  *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) (emphasis and alteration in original)).  A plaintiff is not required "to plead affirmatively in his complaint matters that might be responsive to affirmative defenses even before the affirmative defenses are raised."  *Id.* at 466.  Thus, it was not Plaintiff's burden to allege facts showing that this action is not barred by the statute of limitations; it was Defendant's burden to show that the facts in the Complaint plainly reveal that it is time-barred. Defendant cannot make such a showing because in the Complaint, Plaintiff alleges that he did not learn of the unauthorized transfers until January 31, 2015, less than one year before he filed the Complaint.  None of the other allegations suggest that he was put on inquiry notice before that point.

Defendant next asserts that Plaintiff's claims accrued soon after the allegedly unauthorized transfers and outside of the limitations period because Maryland law imposes an obligation upon bank account holders "to review and investigate their accounts within a reasonable time such that timely notice to the bank of any improper payments or disbursements can be made."  Mot. Dismiss at 2.  Defendant derives this principle from *Union Trust Co. v. Soble*, 64 A.2d 744 (Md. 1949), which interpreted a Maryland negotiable instruments statute as estopping account holders from suing banks for negligently honoring forged checks when the

account holder failed to review canceled checks within a reasonable time and promptly to notify the bank of the forgery. *Id.* at 746-47. Like *Advance Dental Care*, however, *Soble* interpreted a statute governing the misuse of negotiable instruments. It did not address the discovery rule or any statutes of limitations. Moreover, *Soble* found that the depositor was estopped from pursuing a cause of action against the bank; it said nothing about when any cause of action accrued against the forger.

Because Defendant has not shown that the claims are time-barred on the face of the Complaint, Defendant's Motion to Dismiss is denied.

**B.      Motion for Summary Judgment**

Defendant's Motion for Summary Judgment presents statements made by Plaintiff in a March 22, 2016 deposition taken during the course of his state court divorce case. Defendant argues that these statements show that Plaintiff both actually knew and reasonably should have known of the allegedly unauthorized transfers more than three years before he filed this action. Plaintiff rejects Defendant's characterization of the deposition testimony and requests that the Court deny the Motion as premature because he has yet to have an opportunity to conduct discovery necessary to oppose the Motion.

In the deposition, Plaintiff stated that he used the Convergex account on a regular basis "[f]or a while" but that the frequency of his use became "[l]ess and less as time went on." Mot. Summ. J. Ex. 1, Donald Callender Dep. at 75:14-17. He added that the account was not his most important business account, and he did not look at it often. Plaintiff testified that he probably authorized most of the approximately 40 withdrawals from the account between 2010 and 2015.

12

Before authorizing at least some of those withdrawals, he checked the account balance to ensure there were sufficient funds to cover the transaction.[3]

Defendant also submitted a declaration in which she claimed never to have concealed any information from Plaintiff about the wire transfers. She asserts that Plaintiff initiated this action because she has supported Plaintiff's wife during her divorce from Plaintiff.

In response, Plaintiff submitted an affidavit in which he avers that he did not use the Convergex account frequently and that his discovery of the unauthorized transfers was further delayed by Defendant's subterfuge and his own medical and marital problems. He asserts that he needs discovery to oppose Defendant's statute of limitations argument.

Although a party may move for summary judgment before the commencement of discovery, *see* Fed. R. Civ. P. 56(b), "summary judgment before discovery forces the non-moving party into a fencing match without a sword or mask." *McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014). Consequently, "summary judgment [must] be denied when the nonmovant 'has not had the opportunity to discover information that is essential to his opposition.'" *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2015) (quoting *Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006)). The proper procedure for seeking additional time for discovery is to file an affidavit pursuant to Federal Rule of Civil Procedure 56(d) explaining why, "for specified reasons," the party needs discovery to oppose a summary judgment motion. Fed. R. Civ. P. 56(d); *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002). Rule 56(d) "motions are 'broadly favored and should be liberally granted' in order to protect non-moving parties from premature summary judgment

---

[3]   Defendant's Motion for Summary Judgment asserts that Plaintiff initiated a wire transfer from the Convergex account on April 17, 2012, the same day that Defendant allegedly made the second unauthorized transfer. The deposition transcript does not support this assertion. Donald Callender Dep. at 75-77.

motions." *McCray*, 741 F.3d at 484 (quoting *Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264, 281 (4th Cir. 2013)).  Nevertheless, a court may deny a Rule 56(d) discovery request and rule on the summary judgment motion "when the information sought would not by itself create a genuine issue of material fact" sufficient to preclude summary judgment. *Pisano*, 743 F.3d at 931.

Defendant's Motion for Summary Judgment is premature because Plaintiff has not yet had the opportunity to engage in discovery necessary to oppose Defendant's statute of limitations argument.  Specifically, Plaintiff requests discovery regarding Defendant's alleged efforts to conceal the unauthorized transfers.  That line of inquiry is material because the statute of limitations is tolled if a defendant uses fraud to conceal a cause of action. Md. Code Ann. Cts. & Jud. Proc. § 5-203.  Because Plaintiff has not yet had the opportunity to discover information essential to his opposition, the Motion for Summary Judgment is denied.

Even if the Court were to rule on the Motion at this point, Defendant has not shown that she is entitled to summary judgment.  Whether "the plaintiff's failure to discover his cause of action was due to failure on his part to use due diligence, or to the fact that defendant so concealed the wrong that plaintiff was unable to discover it by the exercise of due diligence, is ordinarily a question of fact for the jury." *O'Hara*, 503 A.2d at 1320 (quoting *New England Mut. Life Ins. Co. v. Swain*, 60 A. 469, 472 (Md. 1905)).  Although Plaintiff admitted to having used the Convergex account several times after Defendant made the transfers, those statements do not establish that he necessarily should have known of the allegedly unauthorized transfers, particularly where the record before the Court is so sparse that it contains no account records and no description of how the transfers occurred.  Defendant points to no authority establishing that,

14

as a matter of law, use of a bank account puts the account holder on notice of all transfers from that account.

Finally, Defendant also argues that Plaintiff's efforts in January 2015 to "strong-arm" Defendant into repaying the transferred funds show that Plaintiff "knew everything <u>at least a year</u> before filing these rancorous claims." Mot. Summ. J. at 5-6 (emphasis in original). This statement is correct but irrelevant. Maryland law allows a plaintiff to wait up to three years before filing a civil suit. Accordingly, there remains a genuine issue of material fact whether Plaintiff reasonably should have known of the transfers that precludes summary judgment at this time.

## IV.    Intervention

Diane Callender, Plaintiff's wife, asserts that she should be permitted to join this action as a party through a "Motion to Interplead as a Necessary Party." She and Plaintiff are in the midst of a divorce. The Motion asserts that although Plaintiff authorized Defendant's transfers from the Convergex account, any recovery obtained as a result of this suit will be marital property. Diane Callender seeks intervention to safeguard her interest in this property.

Despite styling her motion as one for interpleader, Diane Callender is actually seeking to intervene. Her Motion and reply brief cite Federal Rules of Civil Procedure 19, 20 and 24, governing mandatory joinder, permissive joinder, and intervention, respectively. She does not invoke Rule 22 regarding interpleader. Since a nonparty cannot file a motion for joinder under Rule 19 or Rule 20, *Arrow v. Gambler's Supply, Inc.*, 55 F.3d 407, 409 (8th Cir. 1995); *Thompson v. Boggs*, 33 F.3d 847, 858 n.10 (7th Cir. 1994), the Court construes the Motion as one for intervention under Rule 24. *See United States ex. rel. Eisenstein v. City of New York*, 556 U.S. 928, 933 (2009) (stating that "intervention is the requisite method for a nonparty to

become a party to a lawsuit"); *Intown Props. Mgmt., Inc.*, 271 F.3d at 168 ("Ordinarily a would-be plaintiff seeking to join a case must timely move to intervene in accordance with Rule 24.").

Diane Callender claims that she is entitled to both mandatory and permissive intervention. Rule 24(a)(2) requires a district court to "permit intervention as a matter of right if the movant can demonstrate '(1) an interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of the action; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation.'" *Stuart v. Huff*, 706 F.3d 345, 349 (4th Cir. 2013) (quoting *Teague v. Bakker*, 931 F.2d 259, 260-61 (4th Cir. 1991)). Permissive intervention under Rule 24(b) is appropriate when the movant "has a claim or defense that shares with the main action a common question of law or fact" and the court finds that intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1)(B), (3). Motions for intervention must "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c).

By asserting her financial stake in the outcome of this lawsuit, Diane Callender has articulated an interest in this action that might support intervention. *See S.E.C. v. Flight Transp. Corp.*, 699 F.2d 943, 948-49 (8th Cir. 1983) (holding that the defendant's wife, who was in the process of divorcing the defendant, was entitled to mandatory intervention in an SEC enforcement action). However, even if Diane Callender can otherwise satisfy the criteria for mandatory or permissive intervention, the Court must still deny her request because it lacks subject matter jurisdiction over her claims.

Although neither party has addressed whether Diane Callender's motion for intervention implicates the Court's subject matter jurisdiction, "questions of subject-matter jurisdiction may be raised at any point during the proceedings and may (or, more precisely, must) be raised *sua*

*sponte* by the court." *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004). When, as here, a court's jurisdiction is based on the complete diversity of the parties under 28 U.S.C. § 1332, the court does not have jurisdiction over claims by persons "seeking to intervene as plaintiffs under Rule 24" if "exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332." 28 U.S.C. § 1367(b) (2012). Consequently, a court lacks subject matter jurisdiction over the claims of an individual who seeks to intervene as a plaintiff, either permissively or as of right, when that individual is a citizen of the same state as one of the defendants. *Griffin v. Lee*, 621 F.3d 380, 386-88 (5th Cir. 2010); *TIG Ins. Co. v. Reliable Research Co.*, 334 F.3d 630, 634-35 (7th Cir. 2003); *Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 159 (3d Cir. 1995).

Diane Callender's Motion indicates that she resides in, and is thus a citizen of, Texas. Defendant also resides in Texas. Therefore, if Diane Callender seeks to intervene as a plaintiff, the Court lacks subject matter jurisdiction over her claims. Because the Motion does not state whether Diane Callender seeks to intervene as a plaintiff or defendant, and does not attach the required pleading setting out the claim or defense for which she seeks intervention, Fed. R. Civ. P. 24(c), the Court must determine whether she would be a plaintiff or defendant if her motion to intervene were granted. *See Griffin*, 621 F.3d at 388; *Dev. Fin. Corp.*, 54 F.3d at 159-60.

Because diversity jurisdiction "cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who are defendants," the court must "look beyond the pleadings and arrange the parties according to their sides in the dispute." *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941) (quoting *Dawson v. Columbia Ave. Sav. Fund, Safe Deposit, Title & Tr. Co.*, 197 U.S. 178, 180 (1905)). To determine the proper alignment of the parties, courts in the Fourth Circuit apply the two-step "principal purpose" test.

17

*U.S. Fid. & Guar. Co. v. A & S Mfg. Co.*, 48 F.3d 131, 133 (4th Cir. 1995). First, the court identifies "the primary issue in the controversy," *id.*, which is the "plaintiff's principal purpose for filing its suit," *Palisades Collections LLC v. Shorts*, 552 F.3d 327, 337 (4th Cir. 2008) (quoting *Zurn Indus., Inc. v. Acton Constr. Co.*, 847 F.2d 234, 237 (5th Cir. 1988)). Then, the "court should align the parties according to their positions with respect to the primary issue." *U.S. Fid. & Guar. Co.*, 48 F.3d at 133.

Plaintiff's primary purpose in filing this suit is to recover money allegedly stolen by Defendant. Diane Callender seeks to intervene to protect her financial interest in any settlement or damages obtained through this lawsuit. Although she apparently disagrees with Plaintiff about whether he has a meritorious claim, that disagreement is ancillary to her goal of securing a share of the allegedly converted funds. Diane Callender is not asking to join this case to urge the dismissal of Plaintiff's claims, and she does not assert her own claims against Plaintiff. Her purpose in seeking intervention is to enjoy the fruits of Defendant's liability, should they ever ripen. Thus, if Diane Callender were granted intervention, she would be aligned as a plaintiff. *See id.* at 134 (holding that co-insurers sued in a declaratory judgment action by the plaintiff insurer were properly aligned as plaintiffs because they shared plaintiff's primary purpose of establishing that there was no duty to indemnify the defendant, even though they disagreed about how that potential indemnity obligation should be divided up among them). Consequently, 28 U.S.C. § 1367(b) prohibits Diane Callender's intervention.

Finally, the Court notes that the same attorney who represents Erica Callender also represents Diane Callender. The Maryland Lawyers' Rules of Professional Conduct prohibit an attorney from representing a client who is asserting a claim against another client in the same litigation. MRPC 1.7(b)(3). This conflict of interest is not waivable. *Id.*; *see also id.* cmt. 17

(explaining that different clients cannot consent to such a conflict "because of the institutional interest in vigorous development of each client's position"). Although counsel should have realized that it would be improper to represent Diane Callender in her attempt to pursue claims against one of his other clients, because intervention is denied, there is no need to address whether new counsel is required.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss and Motion for Summary Judgment are DENIED; Bank of the Bahamas' Motion to Dismiss, as joined by Defendant Erica Callender, is GRANTED IN PART and DENIED IN PART; and Diane Callender's Motion to Interplead as a Necessary Party, construed as a Motion to Intervene, is DENIED. A separate Order shall issue.

Date:   June 30, 2016

THEODORE D. CHUANG
United States District Judge